IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LAUREN P. LAWRENCE, ) | |
| ) | Case No. 1:03-CV-00260 |
| Plaintiff, ) | |
| ) | Judge Ann Aldrich |
| v. ) | |
| ) | Magistrate Judge |
| LITIGATION MANAGEMENT, INC., ) | William H. Baughman, Jr. |
| ) | |
| Defendant. ) | |
| ) | MEMORANDUM AND ORDER |
| ) | |

Before the court is the Report and Recommendation ("R&R") of Magistrate Judge Baughman [Docket No. 54] on the motion for summary judgment filed by defendant Litigation Management, Inc. ("LMI") [Docket No. 22]. Also pending is plaintiff Lauren Lawrence's ("Lawrence") motion to strike [Docket No. 28]. Lawrence has filed objections to the R&R [Docket No. 56]. For the following reasons, the court denies Lawrence's objections and adopts the R&R. LMI's motion for summary judgment is granted in part, and the court enters judgment as a matter of law for LMI on Lawrence's FMLA interference and retaliation claims, as well as on Lawrence's state law claims. Lawrence's motion to strike is denied as moot and the case is dismissed.

**I.  Background**

In this case, Lawrence claims that LMI interfered with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and terminated her in retaliation for exercising her FMLA rights. Lawrence also alleges state law claims against LMI for promissory estoppel and implied contract. The court adopts the R&R's clear and concise statement of the facts of the case. Briefly, while employed by LMI as Director of the Medical Division, Lawrence requested FMLA leave for the period July 16 to September 24, 2002. LMI notified Lawrence that she was eligible and required her to furnish

medical certification of a serious health condition before the leave began. Lawrence provided that certification, and LMI approved the leave.

During the leave, on August 6, 2002, Lawrence and her direct supervisor Jean Bourgeois ("Bourgeois") met concerning a work matter. While the parties disagree about precisely what happened at that meeting, what occurred is immaterial to the resolution of LMI's motion for summary judgment. After the August 6 meeting, correspondence flowed back and forth between Lawrence and LMI. While Bourgeois indicated in a letter dated September 6, 2002 that she believed Lawrence had resigned at the August 6 meeting, at no time did LMI attempt to cancel Lawrence's FMLA leave or cease paying her prior to the expiration of her approved FMLA leave on September 24, 2002. In any case, in a letter dated September 18, 2002, Bourgeois indicated that Lawrence could return to LMI in her previous position at the conclusion of her FMLA leave, if she was "willing to commit to the same expectations applicable to our other Directors." [Docket No. 49, at 390] Lawrence testified that the job duties described by Bourgeois in the September 18 letter simply "restates expectations of a director . . . in the division of medicine at LMI." [Docket No. 49, at 200] In other words, regardless of what happened on August 6, the September 18 letter unequivocally stated that Lawrence would be reinstated to her former position, with the same duties and responsibilities, at the conclusion of her leave.

Lawrence, however, believed that LMI was instead imposing conditions "artificially" and "plan[ned] to set me up so you can terminate me shortly after I return to work." [Docket No. 49, at 395] Bourgeois replied, in a letter delivered by courier on September 23, 2002 that LMI expected Lawrence to return to work on September 24, 2002, and that if she did "not return to work [on September 24, 2002] [LMI] would consider that [Lawrence] ha[d] voluntarily resigned [her] position." [Docket No. 49, at 396] Lawrence did not return to work at the conclusion of her leave on September 24, 2002, and

Bourgeois sent a certified letter on September 26, 2002, stating that LMI considered Lawrence to have voluntarily resigned. [Docket No. 49, at 398]

Lawrence then filed suit in February 2003, claiming that LMI had interfered with her FMLA rights, had terminated her in retaliation for her exercise of FMLA rights, and that LMI had breached an implied employment contract and certain promises upon which Lawrence had relied to her detriment. LMI filed a motion for summary judgment on all claims, and that motion was referred to Magistrate Judge Baughman, who filed the R&R recommending that the court grant LMI's motion for summary judgment and enter judgment as a matter of law for LMI on all of Lawrence's claims.

## **II.    Discussion**

Federal Rule of Civil Procedure 72(b) requires the court to review *de novo* any portion of a magistrate judge's disposition to which specific objections have been made. Local Rule 72.3(b) requires that objections "specifically identify the portions of the proposed findings, recommendations, or reports to which objection is made and the basis for such objections." A district court "shall make *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." *Id*.

Lawrence has two objections to the R&R. First, she objects to the R&R's finding that LMI, through its actions between August 6, 2002 and September 24, 2002, did in fact offer to fully reinstate Lawrence to her previous position of employment as required by FMLA. 29 U.S.C. § 2614(a)(1)(A). Lawrence argues that LMI's "offer" was, at best, an offer of reinstatement with "heavy-handed probation" and at worst a "sham." Pl.'s Obj., at 8 [Docket No. 56]. Put simply, Lawrence argues that LMI's offer of reinstatement was not in good faith, or at least, that the evidence produced may be so

viewed, and summary judgment is therefore inappropriate. Lawrence's second objection concerns the R&R's finding that by failing to show up for work at the conclusion of her FMLA leave on September 24, 2002, Lawrence voluntarily and constructively resigned her position. Lawrence argues that the parties' obligations to each other were not clear enough to allow such a finding as a matter of law, and that the evidence produced instead may be deemed to establish that LMI terminated Lawrence involuntarily.

Neither of Lawrence's objections is well-taken. Regarding her first objection, Lawrence claims that whether she was in fact "terminated" at the August 6, 2002 meeting is a material fact over which there is genuine dispute. However, given the parties' statements in correspondence and behavior after that date, it is clear that whatever happened on August 6 is plainly *immaterial* to Lawrence's claim for FMLA interference. Even if LMI somehow "terminated" her on that date, at no point did LMI cease paying Lawrence or attempt to end her FMLA leave prematurely. Instead, in correspondence on September 18, LMI made it clear that Lawrence could and would be reinstated to her position at the conclusion of her FMLA leave, if Lawrence so desired. The "implications" of LMI's correspondence Lawrence urges upon us are as irrelevant as the events of August 6, 2002 in this case, as LMI did precisely what FMLA required of it. Lawrence's desire for a meeting of some sort to "clear the air" prior to returning to work is not something LMI was obliged to provide, and LMI's refusal to do so did not interfere with Lawrence's FMLA rights. *See* 29 U.S.C. § 2614(a)(3)(B). Simply put, because LMI stated that Lawrence would be reinstated to her original position, with the same duties and responsibilities that she had prior to her leave, at the end of her originally scheduled FMLA leave, LMI did not interfere with Lawrence's FMLA rights. The court denies Lawrence's objection and adopts the R&R's recommendation that summary judgment should be granted in favor of LMI on Lawrence's

FMLA interference claim.

Lawrence's second objection argues that the parties were unclear as to exactly what their obligations were, thanks to the uncertainty created by the August 6 meeting. That argument is belied by the plain language of the correspondence between the parties. In the correspondence, as discussed above, LMI made clear that it would reinstate Lawrence at the conclusion of her leave. LMI also stated, in writing, that if Lawrence did not show up for work at the conclusion of her leave, LMI would take that as her resignation. Lawrence did not show up as required by LMI's written request, and she therefore constructively resigned. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 448 (6th Cir. 1999) (holding "failing to comply with [her] employer's written request requiring [her] to take a certain action" constitutes "constructive resignation" under Ohio common law) (citing *State ex rel. Waldman v. Burke*, 152 Ohio St. 213, 215-16, 88 N.E.2d 578, 578-79 (1949)). Lawrence's claim that the parties were somehow unclear as to her obligations and the repercussions of her failure to show up for work is belied by the plain text of LMI's September 23 letter. Lawrence's separation from LMI was a resignation, not a termination, and Lawrence therefore has no claim under FMLA for retaliatory discharge. *Hammon*, 165 F.3d at 447. The court denies Lawrence's objection and adopts the R&R's recommendation that summary judgment be granted in favor of LMI on Lawrence's FMLA retaliation claim.

The R&R also recommends granting summary judgment in favor of LMI on Lawrence's state law claims for promissory estoppel and breach of implied contract. While "there is no mandatory rule," generally, "'if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *Taylor v. First of America Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). However, because Magistrate Judge Baughman has "determined that [Lawrence's] state law [tort] claim could not survive as a matter of law" for the same

reason that LMI is entitled to judgment as a matter of law on Lawrence's FMLA retaliation claim, "[i]t would make little sense to require Defendant . . . to expend additional resources making the same arguments in state court. Under these circumstances, the interests of judicial economy overc[o]me the presumption against retention of pendent state law claims." *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). For that reason, the court adopts the R&R's recommendation concerning Lawrence's state law claims, and grants LMI summary judgment on the implied contract and promissory estoppel claims as a matter of law.

### III. Conclusion

For the foregoing reasons, the court denies Lawrence's objections [Docket No. 56] to the R&R [Docket No. 54] and adopts the R&R. LMI's motion for summary judgment [Docket No. 22] is granted. The court enters judgment as a matter of law on Lawrence's FMLA interference and retaliation claims, as well as on Lawrence's state law claims. As all of Lawrence's claims have been resolved, Lawrence's motion to strike [Docket No. 28] is denied as moot and the case is dismissed.

This order is final and appealable.

IT IS SO ORDERED.

    /s/Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: March 21, 2006**